UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

—————————————————————————————

PETER MESKO,

                          Petitioner,

            v.                                           9:18-CV-872
                                                         (GTS)

LYNN LILLEY,

                    Respondent.

—————————————————————————————

APPEARANCES:                          OF COUNSEL:

PETER MESKO
15-B-1060
Petitioner, pro se
524 Route 434
Shohola, PA 18458


LETITIA JAMES                         MARGARET A. CIEPRISZ, ESQ.
Attorneys for Respondent  `           Ass't Attorney General
New York State Attorney General
120 Broadway
New York, NY 10271


GLENN T. SUDDABY
Chief United States District Judge

**DECISION and ORDER**

## I.      INTRODUCTION

        Petitioner Peter Mesko seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Dkt. No. 1, Petition ("Pet."). Respondent opposes the Petition. Dkt. No. 13, Answer ("Ans.").

Petitioner has paid the statutory filing fee.

        Petitioner filed the Petition on July 26, 2018. After petitioner paid the filing fee, in an

Order dated August 14, 2018, the Court ordered Respondent to file an answer to the Petition and all relevant records. Dkt. No. 6 ("Order"). In addition to his Answer, on December 13, 2018, Respondent filed a memorandum of law, Dkt. 12 ("Resp. Mem."), and state court records, Dkt. No. 14-1–14-6 ("SR"), including the trial transcript, Dkt. No.14-7 ("Tr."). Petitioner filed a traverse/reply in opposition to Respondent's Answer on January 11, 2019, Dkt. No. 18 ("Reply").

Petitioner subsequently filed a motion requesting appointment of counsel, Dkt. No. 17, and a motion to hold the Petition in abeyance, Dkt. No. 19. Respondent filed an opposition to the two motions, Dkt. No. 20. Both motions were denied by a Decision and Order dated June 27, 2019, Dkt. No. 21.

For the reasons that follow, the Petition is denied and dismissed.

## II.    BACKGROUND

### A.    County Court Proceedings

On February 13, 2014, petitioner was indicted by a Grand Jury sitting in Tompkins County, New York, on charges of rape in the first degree, burglary in the second degree, and sexual abuse in the first degree. SR 45.[1] The charges arose from an incident which occurred at a house party in Ithaca, NY, in the early morning hours of March 30, 2013. Pet. at 9; SR 641.[2]

Early that morning, petitioner, among others, attended a house party in Ithaca, N.Y.

---

[1] The cited page numbers for the state court record ("SR") refer to those at the bottom center of each page, *e.g.*, "SR 45." All other cited page numbers refer to those generated by the Court's electronic filing system ("ECF").

[2] *See* n.1.

2

Pet. at 9; SR 641. The victim's girlfriend resided at the house, and the two had retired to the girlfriend's bedroom instead of partying. Pet. at 9; SR 641. The two women awoke around 4:45 AM to find that a male, whom they later identified as petitioner, had climbed onto their bed and mounted the victim from behind. Pet. at 10; SR 641. The victim's girlfriend shoved him off the bed, and the two fled. Pet. at 10; SR 641. The victim's girlfriend briefly returned to her room and took two photographs of petitioner with her cell phone. Pet. at 10; SR 641-42.

The victim reported the incident to the authorities the same day. SR 642. After an investigation, defendant was arrested and indicted on the three counts noted above. *Id.*

On January 29, 2015, following a jury trial, petitioner was convicted of burglary in the second degree and sexual abuse in the first degree. Pet. at 4; SR 642; Tr. 573, 586-87. After further deliberation, the jury could not reach a verdict on the first degree rape count, which was ultimately dismissed. SR 377, 642; Tr. 618-19. Petitioner was sentenced on March 27, 2015, to a five-year determinate sentence and three years post-release supervision. Pet. at 4; SR 642; Tr. 630, 657.[3]

## B. Direct Appeal

Petitioner appealed the conviction to the New York Supreme Court, Appellate Division, Third Department ("Appellate Division") on April 6, 2015. Pet. at 2; SR 261, 642. He argued

---

[3] Petitioner has been released from prison. However, he is still on post-release supervision, which satisfies the "in custody" requirement of 28 U.S.C. § 2254(a). *See Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006) ("Post-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be "custody." (citing *Jones v. Cunningham*, 371 U.S. 236, 240-43 (1963) (holding that parole satisfies the "in custody" requirement of habeas petitions); *Peck v. United States*, 73 F.3d 1220, 1224 n.5 (2d Cir. 1995) (holding that supervised release satisfies the "in custody" requirement of habeas petitions))).

3

that: (1): the People failed to prove his guilt beyond a reasonable doubt, and the verdict was against the weight of the evidence; (2) prosecutorial misconduct deprived him of a fair trial; (3) the prosecutor's elicitation of evidence of a police interview of a witness and the arrest of petitioner implied that petitioner invoked his constitutional right to remain silent and deprived him of a fair trial; (4) the integrity of the grand jury proceedings was impaired; (5) he received ineffective assistance of counsel; (6) the cross examination of a defense witness eliciting hearsay responses was improper and irrelevant; and (7) the court considered inappropriate factors in sentencing him.  Pet. at 2; SR 2, 261, 642-45.  On May 11, 2017, the Appellate Division affirmed the judgment of conviction.  Pet. at 2; SR 641-46; *see also People v. Mesko*, 55 N.Y.S.3d 748 (N.Y. App. Div. 2017).[4]

Petitioner filed an application for leave to appeal in the New York Court of Appeals, arguing that (1) the Appellate Division erred in affirming petitioner's conviction for burglary in the second degree because he had permission to be in the residence, the bedroom was not secured, and, therefore, was not a separate dwelling; and (2) the "prosecutorial missteps," specifically the prosecutor's "improper" cross-examination of a witness and her "inappropriate and demeaning" references to petitioner during summation, were "far more serious than the [c]ourt found."  SCR 647; *see also* Pet. at 2.  The Court of Appeals denied leave to appeal on August 18, 2017.  Pet. at 2; SR 653;  *see also People v. Mesko*, 64 N.Y.S.3d 681 (N.Y. 2017) (table).  Petitioner did not seek further review.  Pet. at 3.

## III.    THE PETITION

Construing the Petition liberally, petitioner claims that he is entitled to habeas relief on

---

[4] Hereinafter, the Court cites only to the reported decision.

the following grounds: (1) the conviction is supported by legally insufficient evidence; (2) there was prosecutorial misconduct during cross-examination and summation; (3) the trial court erred in allowing the police officers' testimony implying petitioner remained silent because it "created a prejudicial inference of consciousness of guilt;" (4) he was denied a fair trial because the integrity of the grand jury proceedings was compromised; and (5) his trial counsel was ineffective.  Pet. at 17-50, 16-26; Order at 2.[5]

## IV.    DISCUSSION

### A.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted on April 24, 1996, a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may

---

[5] Petitioner lists six grounds for relief in the Petition.  For convenience and clarity, the Court has combined petitioner's prosecutorial misconduct claims..

overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 567 U.S. 37, 38 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under §2254(d) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Id*. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr*., 790 F.3d 109, 121 (2d Cir. 2015) (internal quotation marks omitted).

**B.** *Strickland*

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and that, but for counsel's errors, the result of the proceedings would have been different. *Premo*, 562 U.S. at 121-22; *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The standard "must be applied with scrupulous care" in habeas proceedings, because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial or [in pretrial] proceedings[.]" *Premo*, 562 U.S. at 122. *Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Richter*, 562 U.S. at 110 (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted). A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Even if the petitioner can establish that counsel was deficient, he must still show that he suffered prejudice. Id. at 693-94.

While both the federal and New York constitutions afford defendants a right to competent representation, New York's standard for determining ineffective assistance of counsel is slightly different than the federal *Strickland* standard:

> The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness. The difference arises in the second prong. . . . In New York, courts need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's unprofessional errors, the [outcome] . . . would have been different. Instead, the question is whether the attorney's conduct

> constituted egregious and prejudicial error such that the defendant did not receive a fair trial. Thus, under New York law the focus of the inquiry is whether the error affected the fairness of the process as a whole . . . looking at the totality of the circumstances . . . and asking whether there was meaningful representation.

*Rosario v. Ercole*, 601 F.3d 118, 124 (2d Cir. 2010) (internal quotation marks and citations omitted. Both state and federal courts alike have deemed the New York "meaningful representation" standard somewhat more favorable and generous to defendants; however, it is not contrary to the *Strickland* standard. *Jones v. Annucci*, 124 F. Supp. 3d 103, 108 (N.D.N.Y. 2015).

### C. Procedural Default

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state courts, "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A), (B)(i) & (ii). "The exhaustion requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state [judicial proceedings[.]" *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition. *Rose*, 455 U.S. at 520. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27,

29 (2004) (citations omitted); *see also Fama v. Comm'r of Corr. Servs*., 235 F.3d 804, 808 (2d Cir. 2000). In other words, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and resulting actual prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he or she is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014). To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Prejudice requires a petitioner to show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 154, 170 (1982)) (alteration in original). If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice. *See id.* at 496 (referring to the cause and prejudice test "in the conjunctive"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Courts have also recognized an equitable exception to the procedural bar in cases where a petitioner can prove actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts or critical physical evidence–that was not presented at trial."

*Schlup*, 513 U.S. at 324; *see also Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003).

In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish

that, in light of new evidence, 'it is more likely than not that no reasonable juror would have

found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536-37 (quoting

*Schlup*, 513 U.S. at 327); *see also Doe v. Menafee*, 391 F.3d 147, 160-62 (2d Cir. 2004).

The Supreme Court cautioned, however, that "tenable actual innocence gateway claims are

rare . . . ." *McQuiggan*, 569 U.S. at 386; *see also House*, 547 U.S. at 538 (noting that the

actual innocence gateway standard is "demanding and permits review only in the

extraordinary case." (quoting *Schlup*, 513 U.S. at 327)) (internal quotation marks omitted).

"The gateway should open only when a petition presents evidence of innocence so strong

that a court cannot have confidence in the outcome of the trial unless the court is also

satisfied that the trial was free of nonharmless constitutional error." *McQuiggan*, 569 U.S. at

401 (internal quotation marks omitted). "[A]ctual innocence means factual innocence, not

mere legal insufficiency." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (quoting

*Bousley v. United States*, 523 U.S. 614, 623 (1998)).

### D.    Analysis

Petitioner raises a number of claims, including allegations of insufficient evidence,

prosecutorial misconduct, trial court error, due process violations, and ineffective assistance

of counsel. *See* Petition at 17-50; Order at 2. In opposition to the Petition and memorandum

in support thereof, Respondent argues that several of petitioner's claims are procedurally

barred, in whole or in part, one is not cognizable by this Court, and all are meritless. Ans. at

3; Resp. Mem. at 5.

### 1.    The conviction is supported by legally sufficient evidence.

Petitioner claims that "the evidence was legally insufficient to establish petitioner's

identity as the perpetrator and his guilt of the crimes of which he was convicted beyond a

reasonable doubt."  Pet. at 19.  Specifically, petitioner contends that "[t]he proof was

insufficient to establish each element of burglary in the second degree," *id.*, and that "[t]he

proof was insufficient to establish petitioner's commission of [sexual abuse in the first

degree]," *id.* at 23.  Respondent answers that petitioner's legal sufficiency claim is "largely

unexhausted and procedurally defaulted, barred from habeas review on an adequate and

independent state law ground, and without merit."  Resp. Mem. at 14-15 (capitalization

omitted).

As to exhaustion and procedural default, respondent contends that:

> Petitioner's legal insufficiency claim is largely unexhausted and procedurally
> defaulted because in his leave application to the Court of Appeals, he raised
> only his first and third arguments as to his burglary conviction and no argument
> as to his sexual abuse conviction.  In addition, petitioner's claim is entirely
> barred from habeas review on an adequate and independent state law ground
> because he did not preserve the legal insufficiency claim at trial. . . .

*Id.* at 15.  Therefore, "[t]hose portions of petitioner's legal sufficiency claim that petitioner

failed to raise in his leave application – that the evidence of his sexual abuse conviction was

legally insufficient and that his burglary conviction was insufficient because neither his intent

nor his identity were proven – were abandoned and thus are unexhausted."  *Id.* at 16.

"A federal habeas court will not review a claim rejected by a state court 'if the decision

of [the state] court rests on a state law ground that is independent of the federal question and

adequate to support the judgment.'"  *Merritt v. Chappius*, No. 9:14-CV-1481 (LEK), 2015 WL

11

5711961, at *14 (N.D.N.Y. Sept. 29, 2015) (quoting *Walker v. Martin*, 562 U.S. 307, 315 (2011)) (alteration in original); *see also Coleman*, 501 U.S. at 729 . "This rule applies whether the state law ground is substantive or procedural." *Coleman*, 501 U.S. at 729; *see also Merritt*, 2015 WL 5711961, at *14 ("The state law ground may be a dispositive substantive rule, or 'a procedural barrier to adjudication of the claim on the merits.'" (quoting *Walker*, 562 U.S. at 315)). "A state law ground is adequate if it is 'firmly established and regularly followed.'" *Merritt*, 2015 WL 5711961, at *14 (quoting *Walker*, 562 U.S. at 316). A claim rejected on this basis is procedurally defaulted, "absent a showing of cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., petitioner is actually innocent." *Id.*

The Appellate Division stated that petitioner "failed to renew his trial motion to dismiss at the close of all proof and, as such, his challenge to the legal sufficiency of the evidence presented is unpreserved." *Mesko*, 55 N.Y.S.3d at 750 (internal citations omitted). This finding represents an independent and adequate state ground. *See Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) ("we have held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule . . . [and] constitutes an independent and adequate state law ground . . ."); *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 361 (2d Cir. 2013) ("It is well established that this preservation rule is a firmly established and regularly followed state practice that bars subsequent habeas review.").[6] Therefore, this Court may not consider petitioner's claim, unless petitioner can show either cause for the procedural default and actual prejudice or actual innocence. *See Coleman*,

---

[6] Although petitioner states that the preservation rule "is not a regularly followed state procedural bar . . .," Reply at 1, he provides no evidence in support of his statement, *see id.*

12

501 U.S. at 729-30 ("The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds."); *see also id.* at 750; *Merritt*, 2015 WL 5711961, at *14.

In an effort to surmount the procedural bars, petitioner first asserts that trial counsel was ineffective and "thus provides the gateway . . . ," Pet. at 25, to have his otherwise barred claim heard.[7] However, an allegation of ineffective assistance of counsel only provides a gateway if it rises to the level of *Strickland*. *See Carrier*, 477 U.S. at 492 ("Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default . . . ."). As discussed *infra*, petitioner has not shown that his trial counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688. Moreover, petitioner makes no argument whatsoever regarding prejudice. *See* Pet. at 25.

Petitioner also seeks to use the "actual innocence" gateway to having his legal sufficiency claim heard. Pet. at 25.[8] However, he has provided no "new reliable evidence . .

---

[7] Respondent notes that "[p]etitioner does not allege the ineffectiveness of appellate counsel as cause for his default." Resp. Mem. at 17; *see also id.* at 17 n.4 ("At the end of petitioner's legal sufficiency point, he alleges that 'trial counsel was ineffective and thus provides the gateway' for this Court to consider his claims, but this argument appears to be in response to the Appellate Division's conclusion that trial counsel had failed to preserve his legal sufficiency claim – and was defaulted for that reason – rather to appellate counsel's failure to raise all aspects of his legal sufficiency claim in petitioner's leave application."). However, reading the petition liberally, as it must, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)(citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)), the Court gives petitioner the benefit of the doubt as to whether he was referring solely to the trial preservation issue or the leave application issue.

[8] In his Reply, petitioner refers to a "freestanding claim of actual innocence." Reply at 2. However, to that point petitioner had only argued "actual innocence" as a gateway. Pet. at 25, 33-34, 37-38, 41, 50. His "actual innocence" claim "is procedural, rather than substantive." *Schlup*, 513 U.S. at 314

. that was not presented at trial." *Schlup*, 513 U.S. at 324.[9]  Nor has he demonstrated that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggan*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329).  The argument he makes in his Reply regarding actual innocence goes to legal, not factual, innocence.  *See* Reply at 2 (noting that "an actual innocence claim exist [sic] here as it's interwoven with the State's failure to prove every essential element beyond a reasonable doubt.").  Legal innocence is not enough to overcome the procedural default of his claim. *Bousley*, 523 U.S. at 623-24.

In short, petitioner has not made the required showing of cause and prejudice or actual innocence to overcome the procedural bar to having his defaulted claim addressed by this Court.  *See Kimbrough*, 949 F. Supp. 2d at 361 ("Petitioner has not attempted to establish either cause for his procedural default or that he would be prejudiced should his claim not be reviewed.  . . .  Further, . . . petitioner has made no showing that he is actually innocent of the underlying criminal charges at issue in this case.").  Therefore, petitioner has not overcome the procedural default.

The finding that petitioner had not preserved his legal sufficiency argument for appellate review would normally end the discussion.  However, the Appellate Division also stated that,  "[n]evertheless, our weight of the evidence review includes an evaluation as to whether the elements of the crimes for which he was convicted were proven beyond a

---

[9] Petitioner makes reference in his reply to pictures taken by one of the witnesses which he says "now contradict a major part of their testimony with regards to the alleged crime scene.  That has only come to light during this proceeding."  Reply at 2 (internal citation omitted).  However, the pictures were available–in fact, they were admitted as evidence–during the trial.  Tr. 120-21.  To the extent that petitioner is referring to the availability of trial transcripts, while they may be newly available to him, the testimony itself was obviously available at trial.

14

reasonable doubt." *Mesko*, 55 N.Y.S.3d at 750 (internal citations omitted). Therefore, the Court briefly addresses the portions of petitioner's claim that were included in his application for leave to appeal. *Cf. Jimenez v. Walker*, 458 F.3d 130, 133 (2006) (noting that court had interpreted Supreme Court precedent to "deem such 'either/or' adjudications as resting on the merits of the petitioner's federal claim").

"[T]he critical inquiry on review of the sufficiency of the evidence . . . [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The reviewing court must determine if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The reviewing court must be mindful that when "faced with a record of historical facts that supports conflicting inferences [it] must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (per curiam) (internal quotation marks and citation omitted). "A reviewing court may neither disturb the jury's findings with respect to the witnesses' credibility, nor make its own assessments of the weight of the evidence." *Kimbrough*, 949 F. Supp. 2d at 362 (internal quotation marks and citation omitted). "Finally, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Id.* (internal quotation marks omitted).

In seeking habeas corpus review, a petitioner who claims that the evidence was

insufficient to sustain a conviction bears a "very heavy burden." *Fama*, 235 F.3d at 811.

This is because "[t]he habeas court must be doubly deferential to state court determinations denying legal insufficiency claims applying the deference to state court decisions required under § 2254(d) to the state court's already deferential review under *Jackson* [*v. Virginia*]."

*Clairmont v. Smith*, No. 9:12-CV-1022 (GTS/TWD), 2015 WL 5512832, at *19 (N.D.N.Y. Sept. 16, 2015); *see Matthews*, 567 U.S. at 43 (noting "twice-deferential" standard).

In his application for leave to appeal the Appellate Division's conclusion, petitioner argued that "[i]nsofar, as defendant had permission to be in the complainant's home, and the complainant's bedroom was not separately secured, the bedroom was not, a separate dwelling." SR 647. He further stated that "[w]hile the Appellate Division's Decision in this case talks about the complainant's perception, defendant respectfully submits that the relevant perception is that of the defendant." *Id.*

The Appellate Division's opinion first focused on the elements of the crime of burglary.
*Id.* 750-51. It then summarized the testimony that:

> [W]hile defendant had been invited into the house, the victim and her girlfriend played no role in that invitation and were in bed by the time the revelers arrived. The bedroom door was closed all night except for the victim's girlfriend emerging at one point to tell the partiers to keep it down. The victim's girlfriend also testified that she considered her bedroom to be a private area–a point her roommates agreed upon–and that she had not given defendant permission to enter it. The jury could and did find from the foregoing that the bedroom was a separate dwelling within a building and [t]he fact that the defendant was properly in the common areas of the house did not give him a license to enter it.
> The jury also credited the testimony of the victim and her girlfriend that it was defendant who entered the closed bedroom, climbed onto the back of the sleeping victim and made contact with the victim's vagina. Despite defendant's efforts to portray his motive for entering the room to be innocent, his actions as described by the victim and her girlfriend readily permitted the inference that he intended to commit a crime upon entering it so as to commit burglary in the second degree.

*Id.* (second alteration in original) (internal quotation marks and citations omitted).

Although its conclusion is brief, the Appellate Division's analysis comports with *Jackson v. Virginia*. Having reviewed the court's decision and the trial transcript, and applying the "doubly deferential" standard of review, the Court cannot find that the state court's decision was "objectively unreasonable." *Kimbrough*, 949 F. Supp. 2d at 362; *see also Hirsh*, 74 F. Supp. 3d at 536 (stating that a rational trier of fact, viewing the evidence presented at trial in the light most favorable to the prosecution, "could have found 'the essential elements of the crime[s] beyond a reasonable doubt.'" (quoting *Jackson v. Virginia*, 443 U.S. at 319)) (alteration in original). Thus, the Appellate Division's decision was not "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court . . . ." 28 U.S.C. § 2254(d)(1). Nor was the court's decision "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2). Therefore, petitioner's legal insufficiency claim is denied and dismissed.

### 2. The Appellate Division's conclusion that there was no prosecutorial misconduct was not unreasonable.

Petitioner next alleges prosecutorial misconduct, both during cross examination and summation. Pet. at 26, 48; *see also id.* at 27 ("[T]he prosecutor resorted to unlawful tactics in cross-examination of defense witnesses and summation to win the jury over. She repeatedly referred to safe streets arguments and mocked defense witnesses. As a result, the defense was necessarily undermined."). According to respondent, "petitioner's prosecutorial misconduct claim is partially barred on adequate and independent state law grounds and is

entirely without merit." Resp. Mem. at 2 (capitalization omitted); *see also id.* at 54 (arguing that petitioner's "unexhausted confrontation clause claim and his state evidentiary claims are not cognizable on habeas review.") (capitalization omitted).[10]

Petitioner raised the claim on direct appeal. *See Mesko*, 55 N.Y.S.3d at 751-52; SR 2. The Appellate Division found that, although one question to a defense witness was inflammatory, the prosecutor's actions did not constitute the "type of pervasive and flagrant misconduct" warranting a new trial. *Id.* at 752.

Petitioner also raised the claim in his application for leave to appeal to the Court of Appeals. SR 647 ("From her improper . . . cross-examination of a witness . . . to her inappropriate and demeaning language toward defendant in summation . . . this prosecutor engaged in a pattern of pervasive and flagrant misconduct requiring reversal."). Although respondent correctly notes that the Appellate Division found that the latter portion of petitioner's cross-examination claim was "not preserved," *Mesko*, 55 N.Y.S.3d at 752, and that his summation claims were "largely unpreserved," *id.* at 751, the court made alternate findings on the merits. *See Jimenez*, 458 F.3d at 133. Petitioner subsequently included the claim in his leave application to the Court of Appeals. SR 647. Therefore, the Court addresses petitioner's prosecutorial misconduct claims.

### a.    Cross-examination

Petitioner objects to the prosecutor's cross-examination of a defense witness, Patrick Sullivan, a fellow member of the wrestling team. According to petitioner:

During cross-examination of Patrick Sullivan, the trial prosecutor asked him if

---

[10] The "confrontation clause claim" to which respondent refers is a reference to the second portion of petitioner's cross-examination claim. *See* Pet. at 49.

he thought it was appropriate 'for a stranger to go into a woman's bedroom when she's not aware and put his penis into her vagina.' Incredibly, defense counsel's objection was overruled after the prosecutor said 'it is important to know what his feeling is on this particular issue as it is a matter of credibility.' The trial prosecutor had no good faith basis to ask this question; instead, the prosecutor accused Sullivan of approving of the rape of strange women, and by implication, [petitioner]. What was left for inference, the prosecutor supplied in argument.

Pet. at 29 (internal citations omitted); *see also* Tr. 384.

The Appellate Division concluded that:

Defendant rightly complains that the People subjected a defense witness who had been at the party to inflammatory cross-examination regarding whether he believed it was "okay" for a man to enter a bedroom and force himself upon a sleeping woman. That being said, a prosecutorial misstep of that sort, even when coupled with other sporadic and arguably improper actions by the prosecutor, is not the type of pervasive and flagrant misconduct that would warrant a new trial.

*Mesko*, 55 N.Y.S.3d at 752 (internal citations omitted). Petitioner does not directly address the court's conclusion regarding the question put to Sullivan but, rather, conflates this claim with his argument regarding the prosecutor's summation. *See* Pet. at 28 ('Here, the prosecutor's summation and questioning of defense witnesses was a catalogue of improper remarks designed to demonize the defendant . . . .").

"The 'clearly established Federal law' relevant here is [the Supreme Court's] decision in *Darden v. Wainwright*, 477 U.S. 168 (1986), which explained that a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness' as to make the resulting conviction a denial of due process." *Matthews*, 567 U.S. at 45 (quoting *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974))) (additional citations omitted). The court considers the record as a whole when making this determination, "because even a prosecutor's inappropriate or erroneous

19

comments or conduct may not be sufficient to undermine the fairness of the proceedings when viewed in context." *Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014) (summarizing application of standard). Further, "[w]hen reviewing such claims under the 'unreasonable application prong' of § 2254(d)(1), the habeas court must keep in mind that this standard is a 'very general one' that affords courts 'leeway in reaching outcomes in case-by-case determinations.'" *Id.* (quoting *Matthews*, 567 U.S. at 48).

It is not this Court's task to determine whether the prosecutor's question "was inappropriate, unethical, or even erroneous. *Jackson v. Conway*, 763 F.3d at 148. Rather, the "sole issue" before the Court is "whether it was objectively unreasonable for the [Appellate Division] to find that the behavior did not 'so infect[] the trial with unfairness' that it deprived [petitioner] of due process.*"* *Id.* (quoting *Darden*, 477 U.S. at 180) (second alteration in original). The Appellate Division's conclusion that, although inflammatory, the prosecutor's questioning of Sullivan was not "the type of pervasive and flagrant misconduct that would warrant a new trial," *Mesko*, 55 N.Y.S.3d at 752, was not objectively unreasonable.

The second instance of prosecutorial misconduct with respect to cross-examination about which petitioner complains also involved Patrick Sullivan. Pet. at 31. Petitioner states:

> During cross-examination of Sullivan, the trial prosecutor went to great lengths in an attempt to put the contents of an e-mail sent from Joe Stanzione to other wrestlers, which supposedly instructed everyone to keep their observations "in house." Though Sullivan repeatedly testified that he was never told to keep his observations in-house or not to discuss the matter with the police, the prosecutor was undeterred. In summation, the prosecutor told the jury that "the wrestlers were told to keep things "in-house." Even worse, the prosecutor told the jury that the wrestlers were told to keep things in-house after police spoke to Scott Bosak and Craig Scott. Neither of these facts were within the four corners of the evidence. But that did not stop this prosecutor.
> The prosecutor improperly encouraged inferences of guilt based on facts not

20

in evidence.  Without record basis, not only was the prosecutor arguing that Sullivan was covering up something for petitioner, she took it even farther – she implied something far more sinister.  She implied that the entire wrestling squad was in some conspiracy to cover up evidence of [petitioner's] guilt.  In essence, the prosecutor was testifying.  This went beyond the four corners of the evidence and deprived petitioner of a fair trial.

*Id.*; *see also* Tr. 374-80.  Petitioner contends that the prosecutor's elicitation of hearsay responses was improper, irrelevant, and denied him a fair trial.  Pet. at 48.[11]

The Appellate Division addressed this allegation as follows:

The People were also free to cross-examine a defense witness as to why he did not give his account of the party to a police investigator despite being asked to do so and, in particular, whether that failure was connected to directions given by the captain of a sporting team counting him and defendant among its members to stay quiet.

*Mesko*, 55 N.Y.S.3d at 752 (internal citations omitted).[12]  Petitioner argues that the Appellate Division's conclusion was both an unreasonable application of, and contrary to, the law, specifically *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), and an unreasonable determination of the facts, Pet. at 49-50 (citing *Williams v. Taylor*, 529 U.S. 362 (2000)).

The prosecutor stated that the basis of her questioning regarding why Sullivan did not contact the police was that "it goes to the credibility of this witness."  Tr. 377.  The trial court allowed the questioning, without getting into the content of the email allegedly containing the directions the Appellate Division noted.  Tr. 378-79.  The Appellate Division's implicit finding

---

[11] To the extent petitioner objects to the prosecutor's questioning of Sullivan as eliciting hearsay, he raises an issue of state law, which is not cognizable on habeas review.  *See Estelle v. McGuire,* 502 U.S. at 67-68 (noting that " it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

[12] With respect to this portion of petitioner's cross-examination claim, the Appellate Division found that it, along with other arguments, "are not preserved, not persuasive, or both."  *Mesko*, 55 N.Y.S.3d at 752.

that this line of questioning did not deprive petitioner of a fair trial was not objectively unreasonable "when viewed in context." *Jackson v. Conway*, 763 F.3d at 146.[13]

### b. Summation

Petitioner asserts that the prosecutor's summation "was a catalogue of improper remarks designed to demonize the defendant and to enlist the jurors as protectors on the side of the victim and future victims." Pet. at 28. After "repeatedly" describing petitioner as "horny," petitioner argues that the prosecutor presented the jury with a "safe streets argument – namely, that when petitioner is horny he will rape anyone. Implicit in that argument is that the jury should convict on equivocal evidence and the jury should fill in the gaps in the proof to protect the community from petitioner in the future." *Id.*; *see also id.* ("Thus, to argue that petitioner will rape anyone when he is horny is to encourage the jury to ignore the burden of proof and convict the jury before he can strike again."); Tr. 494-95, 515-16.

The Appellate Division stated that petitioner's "contentions regarding the People's summation are largely unpreserved and, in many cases, involve statements that were fair comment on the evidence, permissible rhetorical comment, or responsive to the defense counsel's summation." *Id.* at 751-52 (internal quotation marks omitted). Petitioner correctly identifies the relevant standard, Pet. at 26, and states:

> In *Donnelly v. Dechristoforo* [sic], 416 U.S. 637 (1974) the Court identified a number of factors pertinent to a decision whether improper statements by the by the persecution [sic] in closing argument are so likely to have influenced the jury's judgment as to have infringe [sic] the defendant's constitutional rights. In contract [sic] to the circumstances that prevailed in the *Dechristoforo* [sic] case, the prosecution's misconduct here pervaded the entire summation, was plainly intentional, was unprovoked by defense counsel and was [not] remedied by the trial court, despite objection. If the due process clause of the Fourteenth

---

[13] The trial spanned several days, and the transcript numbers more than 600 pages.

Amendment imposes any limitations on prosecutorial conduct during closing argument those bounds were surely exceeded by the states [sic] prosecutor in the present case.

*Id.* at 26-27 (internal footnote omitted).[14]

As noted above, the relevant law here is *Darden v. Wainwright*, 477 U.S. 168 (1986), "which explained that a prosecutor's improper comments will be held to violate the Constitution only if they so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Matthews*, 567 U.S. at 45 (internal quotation marks omitted); *see also Darden*, 477 U.S. at 181; *Donnelly*, 416 U.S. at 643.

The prosecutor's description of petitioner as "horny" is no worse than other statements which courts, including the Supreme Court, have found not to warrant habeas relief. *See Darden,* 477 U.S. at 180 & n.12) (noting prosecution's reference to defendant as an "animal," among other offensive comments); *Jackson v. Conway*, 763 F.3d at 149 ("[T]he prosecutor's characterization of Jackson in her opening statement as 'twisted' and 'sadistic' was no more inflammatory than the statements made by the prosecutor in *Darden*, which the Court found did not warrant habeas relief.")(internal quotation marks omitted). Moreover, as to the prosecutor's purported "safe streets" argument, it is enough that "fairminded jurists could disagree as to the correctness of the [Appellate Division's implicit] conclusion that the statements were not so egregious as to deprive [petitioner] of his right to a fair trial." *Jackson v. Conway*, 763 F.3d at 149; *see also Matthews*, 567 U.S. at 47 (noting that "even if the [prosecutor's] comment is understood as directing the jury's attention to inappropriate

---

[14] It is obvious from the rest of petitioner's statements that he inadvertently omitted the word "not" before "remedied by the court, despite objection." Otherwise, petitioner's argument would not make sense.

considerations, that would not establish that the Kentucky Supreme Court's rejection of the *Darden* prosecutorial misconduct claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" (quoting *Richter*, 562 U.S. at 103)).

Petitioner also takes issue with another aspect of the prosecutor's summation. He observes that the trial court precluded the People from "eliciting testimony about the impact of this crime on the victim and Cook." *Id.* at 31 (internal citation omitted). According to petitioner:

> The prosecutor, however, was undeterred during summation. She began by discussing how a "regular type of day" turned into "something so devastating." Next, she told the jury that the victim and Cook continue to be affected because it "obviously has not left either one of them, even after two years." Finally, in a blatant emotional appeal, the prosecutor told the jury:
>> Because what it does is, it cuts to the heart of your very being, your very safety. Olivia was not sexually assaulted, but somebody she loved dearly was sexually assaulted right in front of her. And to add insult to injury, there's the defendant when she comes back down, masturbating on her bed after he's trashed her room. All her safety is gone, all of [the victim's] safety is gone by the defendant's actions.

*Id.* at 32 (internal citations omitted); *see also* Tr. 507 Petitioner claims that "[t]his type of emotional appeal distracts the jury from focusing on the evidence." Pet. at 32.

As noted above, the Appellate Division described the prosecutor's summation, in many cases, as "involv[ing] statements that 'were fair comment on the evidence, permissible rhetorical comment or responsive to the defense counsel's summation.'" *Mesko*, 55 N.Y.S.3d at 751-52 (quoting *People v. Hatcher*, 13 N.Y.S.3d 459 (N.Y. App. Div. 2015)). Petitioner argues that the Appellate Division's decision "was an unreasonable application of Supreme Court precedent, i.e., *Donnelly v. Dechristoforo* [sic], 416 U.S. 637 (1974)," Pet. at

33, and was contrary to that decision, *see id.* (citing *Williams*, 529 U.S. 632).[15]

Petitioner acknowledges that "objections were sustained to some of the prosecutor's comments and the County Court directed the jury to disregard some of the comments." Pet. at 32. Jurors are presumed to follow instructions. *See Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it unless there is an overwhelming possibility that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be devastating to the defendant." (internal citations and quotation marks omitted); *see also id.* ("We have no reason to believe that the jury in this case was incapable of obeying the curative instructions."). In addition, both at the beginning of the trial and prior to summations, the court instructed the jury that comments made by the attorneys were not evidence. *See* Tr. 61 ("Remember, what the lawyers say in an opening statement or at any time thereafter is not evidence."), 457-58 ("Thus, you should remember that whatever the lawyers say, and however they say it, is simply argument submitted for your consideration.), 458 ("Remember, nothing the lawyers say at any time is evidence. So nothing the lawyers say in their summations is evidence."); *see also Darden*, 477 U.S. at 182 ("The trial court instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence."); *Donnelly*, 416 U.S. at 641 noting trial court's instruction to jury that "[c]losing arguments are not evidence for your consideration"); Jackson *v. Conway*, 763 F.3d at 150 ("[I]n its jury charge, the trial court

---

[15] In the heading of this section of the Petition, petitioner also alleges that the prosecutor vouched for the victim during her summation. Pet. at 26. However, he provides no argument on this point, and the Court declines to address it.

explicitly reminded the jury that statements made by the attorneys in summation were not evidence and that the jurors were to draw their own conclusions from the facts, rather than rely on those supplied by counsel . . . ."). All of the cases cited above found that the arguably improper remarks at issue were not, "in the context of the entire trial, ... sufficiently prejudicial to violate [defendant's] due process rights." Donnelly, 416 U.S. at 638.

The Court cannot find that the county court's conclusion that prosecutor's comments during summation were "largely permissible " was "objectively unreasonable," *Matthews*, 567 U.S. at 43; *see also id.* at 47, especially when viewed in the context of the entire trial, *id.* at 46-47. As the *Darden* Court stated, the defendant's "trial was not perfect–few are–but neither was it fundamentally unfair." 477 U.S. at 183. The same can be said for the prosecutor's summation here.

Neither the prosecutor's cross-examination of Sullivan nor her summation "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Matthews*, 567 U.S. at 45. Therefore, the Appellate Division's conclusion was not unreasonable, and petitioner's prosecutorial misconduct claim is denied and dismissed.

> **3.** **Petitioner procedurally defaulted his claim that the trial court erred in allowing testimony regarding police interviews of witnesses and the arrest of petitioner.**

Petitioner contends that the trial court erred in allowing the prosecution to elicit testimony regarding police interviews with witnesses and petitioner's arrest. Pet. at 35. According to petitioner, "[t]he implication of this testimony was clear: petitioner remained silent, while other people spoke to the police, which created a prejudicial inference of consciousness of guilt." *Id.* Respondent argues that "[p]etitioner's claim is procedurally

defaulted, both because he failed to exhaust it and because the Appellate Division held that the claim was unpreserved." Resp. Mem. at 39. Respondent further states that "[t]he Appellate Division's alternative ruling that this claim was unsupported by the record was neither contrary to, nor an unreasonable application of, Supreme Court precedent . . . ." *Id.* (internal quotation marks and citations omitted).

Petitioner raised the claim on direct appeal, SR 2, but did not include the allegation in his application for leave to appeal the Appellate Division's decision, *id.* 647.

The Appellate Division found that "[d]efendant's argument that the People obliquely referred to his pretrial silence is unpreserved and, in any event, unsupported by the record." *Mesko*, 55 N.Y.S.3d at 752 (internal citations omitted). While that type of "either-or" statement may open the door for a federal habeas court to address the issue, *see Jimenez*, 458 F.3d at 133, petitioner's procedural error is compounded by the fact that he failed to include the argument in his application for leave to appeal the Appellate Division's decision, SR 647. Therefore, he did not "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845, and this Court may not address the claim.

Petitioner again attempts to argue cause and prejudice, or actual innocence, to overcome the procedural default of his claim, Pet. at 37-38, but for the reasons stated previously, his attempt fails. Accordingly, petitioner's trial court error allegation is denied and dismissed.

### 4. Petitioner's grand jury claim is not cognizable in federal habeas proceedings.

Petitioner asserts that the integrity of the grand jury proceedings was impaired and

that the Appellate Division unreasonably applied the law and unreasonably determined the

facts in light of the evidence presented in the trial court.  Pet. at 39.  Petitioner argues that:

> [T]he trial prosecutor injected a tremendous amount of hearsay and otherwise
> engaged in pervasive and willful misconduct to the degree that the grant jury
> had no choice but to indict [petitioner].  Specifically, Cook and the victim were
> permitted to discuss how the alleged crime impacted their lives in the future.
> One of the police officers testified that [petitioner] invoked his right of silence.
> Another police officer was permitted to testify about whether DNA would or
> would not be present on the victim's underwear.  This Court should therefore
> reverse.

Pet. at 40 (internal citations omitted).  Respondent states that "[p]etitioner's contentions fails

[sic] to raise any claim cognizable on habeas review."  Resp. Mem. at 43.

Petitioner raised the claim on direct appeal.  SR 2; *see also Mesko*, 55 N.Y.S.3d at .

The Appellate Division found that the grand jury claim, among others, was "not preserved,

not persuasive, or both."  *Mesko*, 55 N.Y.S.3d at 752.  Regarding the allegation of

impropriety in the grand jury proceedings, the court stated that "[t]he grand jury minutes do

not, contrary to defendant's contention, disclose any 'prosecutorial wrongdoing, fraudulent

conduct or' other error prejudicial enough to potentially influence the grand jury's ultimate

decision and warrant dismissal of the indictment."  *Id.* (internal citations omitted).

"In conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v.

McGuire*, 502 U.S. at 68 (citing 28 U.S.C. § 2241); *see also 28 U.S.C.* § 2254(a) ("[A] district

court shall entertain an application for a writ of habeas corpus in behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." ); *Jones v. Annucci*, 124

F. Supp. 3d 103, 115 (N.D.N.Y. 2015) ("To the extent that the Petition raises issues of the

proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding." (citing *Swarthout v. Cooke*, 562 U.S. 216 (2011))). Claims of deficiencies in the state grand jury proceedings are not cognizable in a federal habeas corpus proceeding. *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (citing *United States v. Mechanik*, 475 U.S. 66 (1986)); *see also Davis v. Mantello*, 42 Fed. App'x 488, 490 (2d Cir. 2002) (summary order) (citing *Lopez*, 865 F.2d at 32).

Further, "any error was rendered harmless when [petitioner] was convicted following a jury trial." *Hirsh v. McArdle*, 74 F. Supp. 3d 525, 533 (citing *Lopez*, 865 F.2d at 32 ("[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding . . . was harmless beyond a reasonable doubt.")) (alterations in original); *see also Jones,* 124 F. Supp. 3d at 124-25 ("[I]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." (quoting *Lopez*, 865 F.2d at 32)).

Because petitioner's claim is not cognizable on federal habeas review, and any error was cured by his subsequent conviction, petitioner's claim of grand jury improprieties is denied and dismissed. *See Blond v. Graham*, No. 9:12-CV-1849 (JKS), 2014 WL 2558932, at *9 (N.D.N.Y. June 6, 2014) ("Blond is not entitled to relief because claims of error in New York grand jury proceedings . . . are not cognizable in federal habeas corpus proceedings where, as here, Blond has been convicted by a petit jury. Blond therefore cannot prevail on

this claim.") (internal citations omitted).

### 5.     Defense counsel did not provide ineffective assistance.

Petitioner alleges that his trial counsel was ineffective and that the Appellate Division's contrary conclusion was an unreasonable application of federal law and an unreasonable determination of the facts in light of the evidence presented.  Pet. at 42.  Respondent states initially that petitioner's ineffective assistance claim is unexhausted and procedurally defaulted because he failed to include it in his application for leave to appeal to the Court of Appeals.  Resp. Mem. at 44.  Respondent further argues that the Appellate Division "reasonably rejected petitioner's unexhausted ineffective assistance of counsel claims."  *Id.* (capitalization omitted).

The Appellate Division addressed petitioner's ineffective assistance of counsel allegations at length:

> Defendant further argues that he was plagued by the ineffective assistance of counsel but, "[t]o prevail on such a claim, defendant must demonstrate [both] that his attorney failed to provide meaningful representation . . . [and] the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct."  Defendant attacks the performance of counsel in sundry respects but, far from showing poor representation, the record reflects a coherent and well-executed strategy to cast doubt on a strong case supported by the testimony of the victim and an eyewitness that was supplemented by photographic evidence.  The strategy did not result in defendant's acquittal, but did succeed to the extent that the jury deadlocked on the top count of the indictment.  Perfection from counsel is not demanded and, "[v]iewing this case in its totality and as of the time of the representation, we are satisfied that defendant received meaningful representation."

*Mesko*. 55 N.Y.S.3d at 752 (alterations in original) (internal citations omitted).

Respondent is correct that petitioner has procedurally defaulted his ineffective assistance claims.  Although he presented them on direct appeal, SR 2, he did not include

them in his application for leave to appeal to the Court of Appeals, *id.* 647. Therefore, he failed to "invok[e] one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Nonetheless, because petitioner alleges ineffective assistance of counsel as cause for the procedural default, the Court briefly addresses his claim. As previously observed, in order for an ineffective assistance of counsel allegation to provide cause for a procedural default, it must rise to the level of constitutional ineffectiveness as set forth in *Strickland* and, in terms of prejudice, the New York standard of "meaningful representation" elaborated in cases such as *Rosario*. *See Carrier*, 477 U.S. at 492; *see also Strickland*, 466 U.S. at 687; *Rosario,* 601 F.3d at 124. It is clear from the foregoing that the performance of trial counsel was not constitutionally ineffective. *Mesko*, 55 N.Y.S.3d at 752. Moreover, the Appellate Division applied the proper standard in reaching its conclusion that petitioner received meaningful representation from his attorneys who, while perhaps not perfect in petitioner's view, performed at or above an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688; *Rosario*, 601 F.3d at 124. The Appellate Division did not erroneously or incorrectly apply clearly established federal law or unreasonably determine the facts based on the evidence presented at trial. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. 362 at 385 (noting § 2254(d)(1)'s "command that a federal court not issue the habeas writ unless the state court was wrong as a matter of law or unreasonable in its application of law in a given case").

Petitioner has not demonstrated that his attorneys' performance at trial was constitutionally ineffective; therefore he has not shown cause for the procedural default of his

ineffective assistance of counsel claim, or any of his other procedurally defaulted claims. Accordingly, the claim is denied and dismissed.

## V. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition (Dkt. No. 1) is **DENIED AND DISMISSED IN ITS ENTIRETY**; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[16] and it is further

**ORDERED** that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on the parties, and serve an updated docket sheet upon petitioner, in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: December 3, 2019
      Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge

---

[16] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).